**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

TRAVIS RAMSEY; SUSAN RAMSEY,
Guardian on behalf of Ward,

            Plaintiffs - Appellees,

  v.

CITY OF LAKE HAVASU CITY, a
municipal corporation; LOUIS HUGH
PLUNKETT III, Officer, in his official and
individual capacities,

            Defendants - Appellants.

No.   23-3244

DC No. 3:20-cv-08189-DLR-ESW

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Arizona

John Zachary Boyle, Magistrate Judge, Presiding

Argued and Submitted November 7, 2024
Phoenix, Arizona

Before:    HAWKINS, TASHIMA, and OWENS, Circuit Judges.

Defendant City of Lake Havasu Officer Hugh Plunkett, III, appeals from the

district court's decision denying him qualified immunity at summary judgment.

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Travis Ramsey, an autistic person, and his legal guardian, Susan Ramsey, brought this action under 42 U.S.C. § 1983, the Americans with Disabilities Act, the Rehabilitation Act, and state law against the City of Lake Havasu and Plunkett. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

Construing the evidence in the light most favorable to Ramsey, we conclude that the district court properly denied Plunkett's motion for summary judgment based on qualified immunity. *See Sanderlin v. Dwyer*, 116 F.4th 905, 910 (9th Cir. 2024) ("In reviewing the denial of summary judgment on qualified immunity grounds, we 'decide de novo whether the facts, "considered in the light most favorable to the plaintiff," show that qualified immunity is warranted.'" (quoting *Hopson v. Alexander*, 71 F.4th 692, 697 (9th Cir. 2023))). The district court properly concluded that (1) Ramsey raised a triable dispute as to whether Plunkett violated his Fourth Amendment rights; and (2) the case law at the time of the event clearly established that the use of a taser in dart mode under the circumstances presented here constituted excessive force. *See Peck v. Montoya*, 51 F.4th 877, 887 (9th Cir. 2022) (explaining that in determining whether defendants are entitled to qualified immunity, "we engage in a two-step inquiry," asking first, "whether the facts, viewed in the light most favorable to the plaintiff, demonstrate that the [officers] violated a constitutional right," and second, "whether that right was

2

'clearly established' at the time of the alleged constitutional violation" (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam))).

**1.**     The district court properly concluded that Ramsey raised a triable issue as to whether Plunkett's use of a taser in dart mode violated his Fourth Amendment rights against excessive force.  First, the use of the taser in dart mode "constitute[d] an intermediate, significant level of force that must be justified by the governmental interest involved." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010); *see* also *Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018) (stating that "[w]e approach an excessive force claim in three stages," and that the first step is to "assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted" (quoting *Espinosa v. City & County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010))); *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1116 (9th Cir. 2016) (explaining that "[e]xcessive force claims are analyzed under a Fourth Amendment reasonableness inquiry," and that, "[i]n conducting this analysis, a court must balance the severity of the intrusion on the individual's Fourth Amendment rights against the government's need to use force"); *Mattos v. Agarano*, 661 F.3d 433, 449 (9th Cir. 2011) (en banc) (holding that where an officer used a taser in dart mode, it constituted a "significant level of force"); *Bryan*, 630 F.3d at 825–26 (holding that

3

the use of a taser deployed in dart mode was "an intermediate, significant level of force," citing the "physiological effects, the high levels of pain, and foreseeable risk of physical injury").

The district court also properly concluded that the relevant factors in considering the governmental interest at stake weigh in favor of Ramsey. *See Scott v. Smith*, 109 F.4th 1215, 1224 (9th Cir. 2024) ("We next evaluate the government's interests by considering the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether a suspect is actively resisting arrest or attempting to escape."). First, the severity of the crime or offense weighs against Plunkett's use of significant force. *See Bryan*, 630 F.3d at 829 (finding "no substantial government interest in using significant force to effect [an] arrest for . . . misdemeanor violations"); *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1091 (9th Cir. 2013) (explaining that "failing to immediately comply with an officer order" was "far from severe" for purposes of this factor); *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001) (explaining that the severity of the offense did not support the use of significant force where the plaintiff had not initially committed any crime and, after the encounter, "was charged with nothing more than obstructing the police in the performance of their duties").

4

Second, the record does not indicate that Ramsey posed an immediate threat to Plunkett or others. The video evidence does not show an emergency situation or immediate threat. Rather, it indicates that, although Ramsey resisted being restrained, he did not make violent moves toward the officers, and at the time that Plunkett fired the taser, two officers held Ramsey's arms, another officer held his neck, and Ramsey was almost sitting on the floor. Moreover, there is no indication that Ramsey was armed; to the contrary, as the district court noted, he would have gone through a security screening when he entered the courtroom. *See Singh v. City of Phoenix*, __ F.4th __, No. 23-15356, 2024 WL 5218388, at *4–5 (9th Cir. Dec. 26, 2024) (explaining that, similar to *Glenn v. Washington County*, 673 F.3d 864 (9th Cir. 2011), a case sufficient to put the officer on notice, although the plaintiff failed to comply with the officers' commands to drop a knife, "a number of other circumstances weigh against deeming him 'an immediate threat to the safety of the officers or others,'" including that he "was 'not in possession of any guns,' that he was 'not in a physical altercation with anyone,'" and he "did not attack the officers . . . [nor] did he even threaten to attack any of them" (quoting *Glenn*, 673 F.3d at 873)); *Mattos*, 661 F.3d at 445–46 (concluding that the suspect "did not pose an immediate threat to the safety of the officers or others" where "[s]he actively resisted arrest insofar as she refused to get out of her car when

5

instructed to do so and stiffened her body and clutched her steering wheel to frustrate the officers' efforts to remove her from her car"); *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc) (concluding that a rational jury could find that a suspect did not pose a danger to the officers or others because, although he was uncooperative and shouted expletives at the officers, he made no threats, and the officers had no reason to think he was armed), *disapproved of on other grounds by Lemos v. County of Sonoma*, 40 F.4th 1002 (9th Cir. 2022) (en banc).

Third, although Ramsey was resisting arrest, he was convicted of resisting arrest by "engaging in passive resistance," Ariz. Rev. Stat. § 13-2508(A)(3), and, consistent with his conviction, a reasonable jury could interpret the video evidence to find that he was not "actively resisting arrest." *Mattos*, 661 F.3d at 449; *see also Rice v. Morehouse*, 989 F.3d 1112, 1123 (9th Cir. 2021) ("We have long distinguished between passive and active resistance[.]"); *Gravelet-Blondin*, 728 F.3d at 1091–92 (explaining that resistance that is not "purely passive" and includes ignoring officers' commands and briefly engaging in physical resistance, but is not "particularly bellicose," offers little support for the use of significant force). Two additional factors — Plunkett's failure to give a warning that force was imminent, as well as his apparent failure to consider alternative means of effecting an arrest, despite knowing that Ramsey was autistic, had requested

6

accommodations in the courtroom, and had not committed any serious crime —
weigh against finding the use of force reasonable. *See Bryan*, 630 F.3d at 829, 831
(explaining that the failure to give a warning "is a factor to consider" and that
police not only "are 'required to consider [w]hat other tactics if any were available'
to effect the arrest," but they must also make "greater effort to take control of the
situation through less intrusive means" when they know that an individual is
mentally ill or emotionally disturbed) (quoting *Headwaters Forest Def. v. County
of Humboldt*, 240 F.3d 1185, 1204 (9th Cir. 2000)). Balancing the competing
interests, a reasonable jury could find that the government had a minimal interest in
the use of force against Ramsey, which is insufficient to justify the use of
significant force. *See Bryan*, 630 F.3d at 831 (concluding that the level of force
was excessive where "the government had, at best, a minimal interest in the use of
force"). Moreover, where, as here, "the reasonableness of the force used by [the
officer] . . . turns on 'how the jury interprets the video footage, and whether the
jury credits [the officer's] testimony'" and his version of the facts, there is a triable
dispute as to whether the officer's use of force was excessive. *Sanderlin*, 116 F.4th
at 915.

We therefore affirm the district court's conclusion that a triable issue of fact
existed as to whether Plunkett violated Ramsey's Fourth Amendment rights.

7

**2.** The district court properly concluded that the right to be free from the application of significant force under these circumstances was clearly established at the relevant time, on August 5, 2019. At the time of the conduct at issue in this case, there was a clearly established right to be free from the application of significant force for engaging in passive or minimal resistance or for failing to comply immediately with an officer's orders. *See Gravelet-Blondin*, 728 F.3d at 1093 ("The right to be free from the application of non-trivial force for engaging in mere passive resistance was clearly established prior to 2008."); *Nelson v. City of Davis*, 685 F.3d 867, 881 (9th Cir. 2012) (explaining that cases dating back to 2011 established that "a failure to fully or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force"); *Deorle*, 272 F.3d at 1285 (stating in 2001 that "[e]very police officer should know that it is objectively unreasonable to shoot — even with lead shot wrapped in a cloth case — an unarmed man who: has committed no serious offense, is mentally or emotionally disturbed, has been given no warning of the imminent use of such a significant degree of force, poses no risk of flight, and presents no objectively reasonable threat to the safety of the officer or other individuals"). It also was clearly established that the use of a taser in dart mode under these circumstances constituted significant force. *See Rice*, 989 F.3d

8

at 1125–26 (explaining that, in *Gravelet-Blondin*, a 2013 case, "we held that an officer's tasing of a bystander to an arrest who did not retreat despite the officer's orders violated clearly established law"); *Bryan*, 630 F.3d at 826-31 (holding in 2010 that an officer's use of a taser in dart mode was excessive where, similar to Ramsey, the plaintiff did not pose an immediate threat to the officer or others, was unarmed, had committed only misdemeanor offenses and traffic violations, and was mentally disturbed; his resistance was relatively passive and not "particularly bellicose" and officers failed to provide a warning or to consider alternatives).

For the foregoing reasons, we affirm the district court's denial of Plunkett's motion for summary judgment based on qualified immunity.

**AFFIRMED.**